## Richmond

### THE FLINTKOTE COMPANY

### v.

### W. W. WILKINSON, INC., ET AL.

November 21, 1979.

Record No. 771518.

Present: All the Justices.

*Worth D. Banner* (*Harvey E. White, Jr.; White, Reynolds, Smith and Winters,* on brief), for appellant.

*Charles F. Tucker; William F. Burnside; William Walker* (*David H. Adams; Nina Novak; Taylor, Walker & Adams; Vandeventer, Black, Meredith & Martin,* on briefs), for appellees.

HARMAN, J., delivered the opinion of the Court.

The Flintkote Company (Flintkote or manufacturer) was awarded this appeal to review judgments entered against it in favor of W. W. Wilkinson, Inc. (Wilkinson or contractor), Richard L. F. Kidwell (Kidwell or subcontractor) and Woody Distributors, Inc. (Woody or distributor) in Wilkinson's action against Flintkote for breach of an implied warranty of merchantability of Flintkote's products, upon Kidwell's claim against Flintkote for breach of an implied warranty of merchantability of Flintkote's products, and on the cross-claims for indemnity filed against Flintkote by Kidwell and Woody. The primary issue here is whether the trial court erred in holding that Flintkote's contractual effort to limit the remedy available to a commercial user of its products for breach of the warranty of merchantability was not conspicuous and thus was ineffective.

Wilkinson bid on and was awarded a contract by the Federal government for repair and renovation of two buildings at Fort Monroe, Virginia. As a part of its contract, Wilkinson was obligated to install new floor tile and trim in several rooms in the buildings. The contract documents contained detailed specifications regarding the type and

quality of tile to be used and the manner in which it was to be installed.

Wilkinson's president, upon contacting Woody, a flooring distributor, for information on and detailed specifications concerning tile manufactured by Flintkote, was advised by a Woody employee that these specifications were available only to tile contractors. Instead of the requested material, Woody provided Wilkinson with a publication containing general information about Flintkote tile. This publication contained no disclaimer or limitation of warranties or limitation of remedy.

Kidwell, to whom Wilkinson awarded the tile subcontract, subsequently requested tile specifications from Woody and was provided with a Flintkote publication entitled "Architect's Guide Specifications for Flintkote Floors." The last page of this 16 page publication reads as follows:

### "WARRANTY

"The following warranty extends only to products of The Flintkote Company, and Flintkote makes no representation regarding the specifications appearing herein or their suitability for particular installations.

"Flintkote as manufacturer warrants that its products described in the specifications are of merchantable quality BUT DOES NOT WARRANT THEIR FITNESS FOR ANY PARTICULAR USE OR MAKE ANY OTHER WARRANTY, EXPRESS OR IMPLIED. This warranty may not be enlarged or extended by our sales representatives, written sales information or drawings.

"Liability of Flintkote under this warranty is limited to replacement of its products found to be defective or, at its option, a refund of the purchase price.

"All advice given and specifications supplied by Flintkote shall be used at the sole risk of those receiving the same, and Flintkote assumes no responsibility for the design or construction of any structure in which its products are used. Any review or inspection of plans, buildings or product applications by Flintkote representatives is not to be construed as approval thereof by Flintkote."

Kidwell testified that he delivered the guide to Wilkinson's president. Wilkinson's president, however, testified that Wilkinson never received

the entire guide or the portion of it containing the language set forth above. He further testified that Kidwell furnished Wilkinson with copies of only one page from the guide, which indicated that the tile met government specifications, along with tile samples which were submitted for government approval as required by the government contract.

After Wilkinson received government approval to proceed, Kidwell purchased 156 boxes of Flintkote tile from Woody and began installing it at Fort Monroe. After substantially all of the tile was laid, a government inspector ruled the flooring unacceptable because there was "drifting", which is a malformation of tile rows. At this point Kidwell retired from further work on the project.

A representative of Flintkote, advised that drifting had occurred, inspected several sample tiles from the lot furnished for the job and later visited the job site at Fort Monroe. He concluded the tiles were square and that the cause of the problem was the subcontractor's "extremely poor job of patching" the subfloor. As a result, the manufacturer stood on the merchantability of its product and did not offer refund or replacement under the express warranty.

The government inspectors required the general contractor to remedy the situation by installing an "overlay", *i.e.*, new tile over the rejected tile. Wilkinson incurred substantial expenses in doing this work as it necessitated grinding down the defective tile and installing complying tile. Under the contract provisions, the government levied liquidated damages against Wilkinson for delay in completing the contract.

Wilkinson filed suit against Kidwell for improper installation of the tile and against Woody and Flintkote for breach of the warranty of merchantability. Kidwell and Woody filed cross-claims against the other defendants seeking indemnity, including attorneys' fees. Kidwell also cross-claimed against Flintkote for breach of warranty.

The trial court severed trial of the cross-claims for indemnity and proceeded to trial with a jury on Wilkinson's claims against all defendants and upon Kidwell's breach of warranty claim against Flintkote. The jury returned a verdict in favor of Kidwell and Woody on Wilkinson's claim against them. The jury also returned verdicts for $10,784.82 in favor of Wilkinson against Flintkote and for $1,631.42 in favor of Kidwell against Flintkote. Judgment was subsequently entered on these verdicts.

During the course of this trial Flintkote asserted its limitation of remedy claim on several occasions. First, prior to the introduction of any evidence, it made a motion *in limine* to the introduction of any

evidence of consequential damages. The limitation of remedy claim was again raised at the end of Wilkinson's evidence and at the end of all of the evidence upon motions to strike. Both motions were denied by the trial court. Wilkinson tendered an instruction incorporating its limitation of remedy theory which was refused by the court. Finally, this claim was again raised on a motion to set aside the verdict which was overruled by the trial court by an opinion letter.

■ In its opinion letter the trial court set forth alternate grounds for its ruling on the limitation of remedy question stating: ". . . there was no evidence of an agreement of the parties to limit the remed[y] for a breach of warranty; nor does the effort by the defendant Flintkote to do so meet the requirements of the law." The trial court's conclusion that the limitation of remedy provisions contained in Flintkote's guide did not meet the requirements of the Virginia Uniform Commercial Code (U.C.C.) was apparently based on a mistaken interpretation of *Lacks* v. *Bottled Gas Corp.*, 215 Va. 94, 205 S.E.2d 671 (1974). There, because of the posture in which the case reached us, the only question which we could decide was whether the printed provisions of a contract document were "conspicuous" under the statutory definition of that term contained in the U.C.C. Code § 8.1-201(10). The very different question posed by this appeal is whether the U.C.C. requires a contract provision imposing a limitation of remedy for breach of warranty to be "conspicuous" in order to be effective.

While this question is one of first impression in Virginia, we note that other courts, faced with the same issue, have reached differing conclusions. Annot. 73 ALR 3d, 248, 269-72. We adopt what we believe to be the sounder and better reasoned rule that conspicuous language is not required in a writing to create a valid limitation of remedy.

Unlike Code § 8.2-316(2)[1] which requires conspicuous language to exclude or modify the implied warranties of merchantability or of fitness for a particular purpose, Code § 8.2-719[2], which expressly

---

[1] Code § 8.2-316(2), in pertinent part, provides:

"(2) . . . to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

[2] Code § 8.2-719 provides:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section [§ 8.2-718] on liquidation and limitation of damages,

recognizes that the contracting parties may bargain for a limitation of remedy, contains no such requirement. Moreover, Code § 8.2-316, in dealing specifically with exclusion or modification of warranties, points up and recognizes the distinction between exclusion and modification of *warranty terms* and limitation of the *remedy for breach* by providing:

> "(4) Remedies for breach of warranty can be limited in accordance with the provisions of this title on liquidation or limitation of damages and on contractual modification of remedy (§§ 8.2-718 and 8.2-719)."

The distinction receives further clarification in official comment 2 to Code § 8.2-316, which points out:

> "2. . . . This Article treats the limitation or avoidance of consequential damages as a matter of limiting remedies for breach, separate from the matter of creation of liability under a warranty. If no warranty exists, there is of course no problem of limiting remedies for breach of warranty. Under subsection (4) the question of limitation of remedy is governed by the sections referred to rather than by this section."

■ The parties tried this case on the theory that the limitation of remedy was not effective unless it had been agreed to by all the parties. This is the law of the case. *But see* U.C.C. § 2-318, Official Comment 1, quoted in annotations to Code § 8.2-318.

Because the testimony of Kidwell and Wilkinson's president raises an issue of fact whether the limitation of remedy became a part of the bargain between the parties, we hold that the trial court erred

---

"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this title and may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

in refusing to submit that issue to the jury. Therefore, we will reverse the judgment against Flintkote in favor of Wilkinson and Kidwell on their breach of warranty claims and remand those claims for a new trial.

A secondary issue raised by Flintkote arises from the judgments entered against Flintkote by the trial court indemnifying Kidwell and Woody for attorney's fees which they expended in the defense of Wilkinson's claims against them for breach of warranty. The error assigned on the issue reads:

"The court erred in entering judgment for codefendants on their cross-claims for attorney[']s fees without having allowed the jury to consider the amount or reasonableness of such attorney[']s fees."

We note that this assignment does not challenge the right of Kidwell and Woody to indemnity so that is not an issue here. Rule 5:21. The record discloses that Flintkote clearly waived a jury trial on the amount of such fees so the judgment for attorney's fees will be affirmed.

*Affirmed in part, reversed in part, and remanded.*