Rachel **BOWDOIN** and Billy G. **Bowdoin**, Plaintiffs-Appellants,

v.

**SHOWELL GROWERS, INC.**, a Maryland corporation, and **FMC Corporation**, an Illinois corporation, et al., Defendants-Appellees.

No. 86–3231.

United States Court of Appeals, Eleventh Circuit.

June 2, 1987.

Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Mark J. Proctor, D.L. Middlebrooks, Pensacola, Fla., M. Dale Marsh, Enterprise, Ala., for Rachel and Billy G. Bowdoin.

A.G. Condon, Jr., Pensacola, Fla., for FMC Corp.

John M. Fite, Panama City, Fla., for Neapco, Inc.

Before VANCE and ANDERSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

This appeal raises a single question: whether the defendants effectively disclaimed the implied warranties of fitness and merchantability with respect to a high pressure spray rig that caused injuries to the plaintiffs. The district court concluded that a disclaimer found in the instruction manual that accompanied the spray rig when it was delivered to the purchaser was conspicuous and therefore effective. We disagree. Even assuming that the disclaimer was otherwise conspicuous, it was delivered to the purchaser *after* the sale. Such a post-sale disclaimer is not effective because it did not form a part of the basis of the bargain between the parties to the sale. The decision of the district court is therefore reversed.

## FACTS

At the time this controversy arose, the plaintiffs in this action, Rachel and Billy Bowdoin, raised chickens in Sampson, Alabama, for Showell Growers, Inc., a Maryland corporation. Under their contract with Showell Growers, the Bowdoins were required once a year to give a thorough cleaning to their chicken house and the chicken coop pallets. To aid them in this annual task, Showell Growers lent the Bowdoins a high pressure spray rig. In December 1980, Mrs. Bowdoin was using the spray rig to clean the pallets when an article of her clothing caught in the safety shield covering the spray rig's power take-off shaft. Mrs. Bowdoin was pulled into the shaft and suffered severe injuries.

The spray rig in question was manufactured by FMC Corporation, an Illinois corporation. The safety shield and drive shaft component was manufactured for FMC by NEAPCO, Inc., a Pennsylvania corporation. Showell purchased the spray rig from FMC through an FMC dealer, Brushy Mountain Co-op of Moravian Falls, North Carolina. Two weeks after the sale, the spray rig was shipped to Brushy Mountain and then delivered to Showell Growers. An instruction manual was included with the spray rig when it was delivered to Showell Growers. The last page of the instruction manual included a purported warranty disclaimer, which stated: *"The foregoing warranty is expressly in lieu of any and all other warranties, express, implied, statutory or otherwise (including, but without limitation, the implied warranties of merchantability and fitness for a particular purpose)...."* [1]

Usually, FMC required its dealer and the purchaser to complete an "agriculture delivery report" before a sale. The report contains a disclaimer of the implied warranties of fitness and merchantability. The purchaser is required to read the report and sign it acknowledging that he has read the warranty information. The report is then returned to FMC. The record shows that no agriculture delivery report was completed in connection with the purchase by Showell Growers.

In 1982, the Bowdoins filed a diversity action against Showell Growers and FMC in the United States District Court for the Northern District of Florida. The Bowdoins later added NEAPCO as a defendant.

---

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. (emphasis in original).

The Bowdoins sought to recover on a number of counts including one count alleging breach by FMC and NEAPCO of the implied warranties of fitness and merchantability. FMC and NEAPCO moved for summary judgment on this count. The district court concluded that the law of Alabama applied to the warranty claims[2] and that under Alabama law, FMC and NEAPCO had effectively disclaimed the implied warranties with the disclaimer in the instruction manual. The district court therefore granted summary judgment in favor of FMC and NEAPCO, and dismissed with prejudice the Bowdoins' implied warranties claims.

The Bowdoins now appeal that ruling.[3] The sole issue on appeal is whether the district court correctly determined that FMC and NEAPCO had effectively disclaimed the implied warranties. The Bowdoins contend that the district court's ruling in favor of FMC and NEAPCO is erroneous for several reasons: the disclaimer was not part of the bargain and is therefore ineffective; the disclaimer is not conspicuous as required under Alabama law; the spray rig comes within the classification of "consumer goods" and therefore a manufacturer cannot disclaim implied warranties; the disclaimer is unconscionable; and finally, even if the disclaimer is effective as to FMC, it is ineffective as to NEAPCO, which manufactured the drive shaft and safety shield component. We conclude that the disclaimer is ineffective as to both FMC and NEAPCO[4] because it did not form a part of the basis of the bargain. We therefore do not reach the Bowdoins' other arguments.

## DISCUSSION

Under the Uniform Commercial Code as adopted by Alabama and virtually every other state, a manufacturer may disclaim the implied warranties of merchantability and fitness provided that the disclaimer is in writing and conspicuous,[5] and provided that the disclaimer is part of the parties' bargain. If a disclaimer was conspicuous to the purchaser *before the sale*, a court will generally hold the disclaimer effective based on the assumption that the disclaimer formed a part of the basis of the bargain. If, however, the disclaimer was not presented to the purchaser before the sale, the court will hold such a disclaimer ineffective because it did not form a part of the basis of the bargain.[6] This "basis of the bargain" rule protects purchasers from unexpected and coercive disclaimers.

We turn now to determine whether the FMC disclaimer was a part of the basis of the bargain. The parties agree that for purposes of this analysis, the Bowdoins stand in the shoes of Showell Growers. The question therefore is whether the disclaimer is effective as to Showell Growers. We conclude that it is not.

Showell Growers purchased the spray rig at least two weeks before it was delivered. When the rig was delivered, an instruction manual was enclosed, and in that instruction manual is the disclaimer upon which FMC and NEAPCO rely. The disclaimer was never brought to Showell's attention.

Such a post-sale disclaimer is ineffective.[7] "By definition, a disclaimer that appears for the first time after the sale in something supplied by the seller is not a part of the basis of the bargain and therefore is not binding on the buyer. Thus, the buyer is not bound by the disclaimer to which he had never agreed at the time of the sale and which first appears in the manufacturer's manual delivered to the

2. The parties agree that the law of Alabama applies.

3. The district court concluded that there was no just reason for delay of the appeal of the ruling and therefore deemed it a final judgment under Fed.R.Civ.P. 54(b).

4. NEAPCO concedes that if the disclaimer does not protect FMC, it similarly does not protect NEAPCO.

5. Ala. Code § 7–2–316(2) (1984).

6. R. Anderson, *3 Uniform Commercial Code* § 2–316:25, p. 342.

7. *Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969).

buyer with the goods [or] the manufacturer's printed material, brochure, or warranty booklet that accompanies the goods...."[8]

The leading Alabama decision on disclaimers of implied warranties is in harmony with this position. In *Tiger Motor Co. v. McMurtry*,[9] the Alabama Supreme Court addressed the validity of a disclaimer of implied warranties with respect to an automobile. The evidence showed that the day after the sale took place, the automobile was delivered to the purchaser along with the disclaimer. The evidence also showed that the disclaimer was never called to the purchaser's attention before the sale. The court concluded that the disclaimer was ineffective.[10] Decisions of other courts construing the same provisions of the Uniform Commercial Code have also concluded that a post-sale disclaimer is not effective.[11]

FMC attempts to distinguish these cases on three grounds. First, FMC argues that unlike the purchasers involved in most of the cases, who were, for the most part, individual consumers, Showell Growers is a sophisticated commercial enterprise. But FMC has not offered and we have not found a post-sale disclaimer case in which such a distinction was material. Indeed, several of the cases in other states did involve commercial transactions between sophisticated commercial enterprises or

businessmen, and the results reached were not affected: Courts consistently held that post-sale disclaimers were ineffective.[12]

FMC next argues that here the post-sale disclaimer was effective because it was conspicuous. Specifically, FMC asserts that the cases which have held post-sale disclaimers ineffective involved "egregious facts involving the combination of the failure of a disclaimer to be conspicuous and its appearance subsequent to the parties' transaction".

FMC's argument is, however, wrong on both the facts and the law. Several of the cases holding post-sale disclaimers ineffective did not even mention whether the disclaimer was otherwise conspicuous.[13] And the cases to which FMC is apparently referring typically involved not one disclaimer but two: one in the sales contract and the other in a document delivered after the sale, such as an instruction manual or a warranty. In those cases, the courts held both disclaimers ineffective: the disclaimer in the sales contract because it was in small print and therefore not conspicuous, and the post-sale disclaimer because it was not a part of the basis of the bargain.[14] In these cases, as in the cases involving only a post-sale disclaimer, the courts generally did not discuss whether the disclaimer was otherwise conspicuous.[15] The absence of

---

**8.** R. Anderson, *3 Uniform Commercial Code* § 2–316:32, p. 345 (footnotes omitted).

**9.** 284 Ala. 283, 224 So.2d 638 (1969).

**10.** 284 Ala. at 288–90, 224 So.2d at 642–44.

**11.** *Van Den Broeke v. Bellanca Aircraft Corp.,* 576 F.2d 582, 584 (5th Cir.1978) (applying Mississippi law); *Horizons, Inc. v. Avco Corp.,* 551 F.Supp. 771, 779 (W.D.S.D.1982) (applying South Dakota law), *aff'd in part, rev'd in part,* 714 F.2d 862 (8th Cir.1983); *Dorman v. International Harvester Co.,* 46 Cal.App.3d 11, 120 Cal. Rptr. 516, 522 (1975); *Koellmer v. Chrysler Motors Corp.,* 6 Conn.Cir. 478, 276 A.2d 807 (1970), *cert. denied,* 160 Conn. 590, 274 A.2d 884 (1971); *Rehurek v. Chrysler Credit Corp.,* 262 So.2d 452, 455 (Fla.Dist.Ct.App.), *cert. denied,* 267 So.2d 833 (Fla.1972); *George C. Christopher & Son, Inc. v. Kansas Paint & Color Co.,* 215 Kan. 185, 523 P.2d 709, 716 (1974); *Pfizer Genetics, Inc. v. Williams Mgmt. Co.,* 204 Neb. 151, 281 N.W.2d 536, 539 (1979); *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J.Super. 441, 240 A.2d 195, 198–200 (1968); *Gold Kist, Inc. v. Citizens & Southern*

*Nat'l Bank of South Carolina,* 286 S.C. 272, 333 S.E.2d 67, 70 (S.C.Ct.App.1985).

**12.** *See, e.g., Van Den Broeke,* 576 F.2d 582; *Horizons, Inc.,* 551 F.Supp. 771; *George C. Christopher & Son, Inc.,* 215 Kan. 185, 523 P.2d 709.

**13.** *See, e.g., Van Den Broeke,* 576 F.2d 582; *Horizons, Inc.,* 551 F.Supp. 771; *Pfizer Genetics, Inc.,* 204 Neb. 151, 281 N.W.2d 536; *Zabriskie Chevrolet, Inc.,* 99 N.J.Super. 441, 240 A.2d 195; *Gold Kist, Inc.,* 333 S.E.2d 67.

**14.** *See, e.g., Dorman,* 46 Cal.App.3d 11, 120 Cal. Rptr 516; *Koellmer,* 6 Conn.Cir. 478, 276 A.2d 807; *Rehurek,* 262 So.2d 452; *Zabriskie Chevrolet, Inc.,* 99 N.J.Super. 441, 240 A.2d 195.

**15.** Indeed, even in those cases in which the court did discuss whether a post-sale disclaimer was otherwise conspicuous, it is clear that the inconspicuousness of the disclaimer was merely an alternate ground for holding the disclaimer ineffective. *See, e.g., Dorman,* 46 Cal.App.3d 11,

such a discussion is not surprising, because as a general rule the conspicuousness of a post-sale disclaimer is immaterial. By definition, a post-sale disclaimer is not conspicuous in the full sense of that term because the reasonable person against whom it is intended to operate could not have noticed it before the consummation of the transaction.[16] A post-sale disclaimer is therefore not effective merely because it was otherwise conspicuous.[17]

Finally, FMC argues that its post-sale disclaimer is effective because of prior dealings with Showell Growers that put Showell on notice that FMC's practice was to disclaim implied warranties with respect to high pressure spray rigs. Showell Growers had previously purchased an FMC spray rig similar to the one that caused Mrs. Bowdoin's injuries. The instruction manual accompanying the first spray rig contained a disclaimer of implied warranties, and according to one Showell employee, that instruction manual appeared to be identical to the one accompanying the spray rig in question. From this, FMC

argues that Showell was on notice that FMC was disclaiming the implied warranties with respect to the second spray rig.

■ This argument misses the point. Even assuming that the mere similar appearance of two instruction manuals could put a purchaser on notice that a disclaimer in the first would also be found in the second, FMC's argument fails for the same reason its argument that a post-sale disclaimer can be effective if it was otherwise conspicuous failed. A disclaimer must be conspicuous before the sale, for only then will the law presume that the disclaimer was part of the bargain. In this case, Showell Growers did not receive the second instruction manual until after the second sale was consummated. The disclaimer in that instruction manual was therefore without significance. This is not less true merely because earlier Showell had received a similar instruction manual. Until it received the second instruction manual, it could not know what it would look like or what it would contain.[18]

120 Cal.Rptr. at 523 n. 10; *George C. Christopher & Son, Inc.,* 215 Kan. 185, 523 P.2d 709.

**16.** *See* Ala. Code § 7–1–201(10) (1984) (defining the term "conspicuous" as being such that "a reasonable person against whom it is to operate ought to have noticed it"); *see also Flory v. Silvercrest Indus., Inc.,* 130 Ariz. 15, 633 P.2d 424, 427 (Ariz.App.1980) (post-sale disclaimer cannot be conspicuous), *aff'd in part, vacated in part,* 129 Ariz. 574, 633 P.2d 383 (Ariz.1981); *Marion Power Shovel Co. v. Huntsman,* 246 Ark. 152, 437 S.W.2d 784, 787 (1969) (same).

**17.** *See* Annotation, Construction and Effect of UCC § 2–316(2) Providing that Implied Warranty Disclaimer Must Be "Conspicuous", 73 A.L.R.3d 248, 260 (1976) ("A number of courts have recognized that a written exclusion of implied warranties which is supplied after the contract of sale has been entered into is ineffectual, regardless of its conspicuousness, since it represents a unilateral attempt by the seller to limit warranty obligations which have already arisen.").

**18.** We note that this is not a case where the prior dealings between the parties established a course of conduct under which it was clear to Showell that FMC made a practice of disclaiming implied warranties. One earlier transaction is generally insufficient to establish a course of conduct. *Cf. Sanco, Inc. v. Ford Motor Co.,* 771

F.2d 1081 (7th Cir.1985). And indeed, even if one transaction could establish a course of conduct, the actions of FMC were incongruous with a course of conduct of disclaiming implied warranties. In connection with the first sale, FMC apparently required Showell to sign an agriculture delivery report before the consummation of the sale. That report contained a disclaimer of implied warranties, and Showell was required to acknowledge that it accepted the disclaimer. There is no evidence that a similar report was completed in connection with the second transaction. Showell could have inferred from the absence of such a report that FMC was not disclaiming the implied warranties with respect to the second spray rig.

Similarly, mere acceptance by Showell of the spray rig and the instruction manual is insufficient to show that Showell assented to a modification of the original bargain. *Cf. Rehurek,* 262 So.2d at 455 (inconspicuous disclaimer not effective even though the purchaser had apparently read the disclaimer before the sale was made). FMC did not present Showell with a modification and then offer Showell an opportunity knowingly to accept or reject that modification. *See Gold Kist, Inc.,* 333 S.E.2d at 71 ("An agreement to modify can only be found, however, if the evidence reveals that the buyer acquired knowledge of the offered modification and had an opportunity to object to it."); *see also Van Den Broeke,* 576 F.2d 582; *George C. Christopher & Son, Inc.,* 215 Kan. 185, 523 P.2d

CONCLUSION

We conclude that the post-sale disclaimer of implied warranties found in the instruction manual that accompanied the FMC spray rig is ineffective because it did not form a part of the basis of the bargain. The decision of the district court is therefore REVERSED, and the district court is instructed to reinstate the Bowdoins' breach of implied warranties of fitness and merchantability claims against FMC and NEAPCO.

709; *Horizons, Inc.,* 551 F.Supp. 771; *Rehurek,* 262 So.2d 452; *cf. Monsanto Agricultural Prods. Co. v. Edenfield,* 426 So.2d 574 (Fla.Ct.App.1982) (modification found where label on product clearly stated that the manufacturer disclaimed all implied warranties and that if the purchaser did not wish to keep the product given that disclaimer, he could return it for a full refund). Although we express no opinion as to whether *Monsanto Agricultural Products, Co.* represents a correct statement of the law in Alabama, we note that it is consistent with the result we reach today because unlike the label involved in *Monsanto Agricultural Products Co.,* the disclaimer in the instruction manual that accompanied the spray rig did not offer the purchaser an opportunity to return the product if that purchaser did not wish to accept the disclaimer.