## CIRCUIT COURT OF BEDFORD COUNTY

M. B. Goode
and Mark B. Goode,
d/b/a Double Good Farm

v.

Franklin Welding and Equipment Co., Inc.,
and J-Star Industries, Inc.

November 24, 1999

Case No. CL98009420-00

BY JUDGE JAMES W. UPDIKE, JR.

In the captioned matter, plaintiffs' amended motion for judgment alleges breaches of an implied warranty of merchantability and an implied warranty of fitness for a particular purpose under §§ 8.2-314 and 8.2-315 of the Code of Virginia, respectively.

M. B. Goode and his son, Mark B. Goode, own and operate as equal partners a farm in Bedford County known as Double Good Farm. On December 10, 1996, the plaintiff, Double Good Farm (hereinafter "Double Good") ordered a new feed mixer from defendant, Franklin Welding and Equipment Company, Inc. (hereinafter "Franklin Welding"). The order form (pl's. memo. ex. 1) indicates a purchase price of $32,000.00 for the new mix wagon and a trade-in allowance of $8,700.00 for Double Good's old mix wagon. On December 11, 1996, Double Good arranged financing through Farm Credit System for the balance of the purchase price (pl's memo. exs. 3 and 4), and on December 12, 1996, Double Good issued check number 8521 payable to Franklin Welding in the amount of $23,300.00 (pl's memo. ex. 5). The order form (pl's memo. ex. 1) is marked "Paid check 8521 12-12-96" and underneath this notation are the initials "G.B.," these being the initials of Galen Bowman, Franklin Welding's salesman.

On December 11, 1996, Franklin Welding ordered the feed mix wagon from defendant, J-Star Industries, Inc. (pl's. memo. ex. 2). The indicated shipping date of the new mix wagon was January 27, 1997, but because the new feed mixer had to be manufactured, it was not delivered until March 19, 1997. During the period between December 11, 1996, and March 19, 1997, Double Good continued to use the old feed mixer.

On March 19, 1997, Franklin Welding delivered to Double Good the new feed mixer. At that time, a warranty registration form (pl's. memo. ex. 7), which also displays a service and safety checklist, was signed by Mark B. Goode on behalf of Double Good and by G. R. Bowman on behalf of Franklin Welding. Above these two signatures, the following is stated:

> I hereby acknowledge: (1) the completion of the "service and safety check" and that I retained a copy thereof, together with the Owner's Manual; (2) that I have read and understand the nature, extent, limitations, and exclusions of the manufacturer's warranty, and; (3) that there were and are no other representations or warranties, either express or implied by anyone.

Pl's. memo. ex. 7.

As to the circumstances of the delivery of the new mix wagon, Double Good states the following in its memorandum:

> By March 19, 1997, the mix wagon was ready for delivery to Double Good Farm. On that date, the wagon was delivered by the salesman, Galen Bowman. He was at the farm from 1 to 1½ hours (Goode dep., p. 42). During that time, Bowman presented the check sheet (Exhibit No. 7) to Mark Goode and obtained his signature thereon. He also delivered to Goode three documents, as follows: "Ensilmixer Model 400 Owners Manual," "Digi-Star Operation & Installation Manual" and "Digi-Star Short Form Setup & Calibration," three separate documents containing ninety-three pages. Nothing on the cover of any of these documents would lead one to suspect that one of those ninety-three pages purported to disclaim the implied warranties of merchantability and fitness for a particular purpose. Nevertheless, inside the last of the above-mentioned documents is a page entitled "3 Year Warranty-Electronic Scale Products" (Exhibit No. 8). No other document delivered to Goode contained any express warranty or effective limitation of implied warranties. When Bowman left Double Good Farm, he took with him the mix wagon the plaintiff had traded.

Pl's. memo. in support, pp. 3, 4.

Similarly, Franklin Welding states the following in its memo as to the circumstances surrounding the delivery of the new mix wagon:

> Galen Bowman ("Bowman"), a salesman with Franklin Welding, delivered the new feed mixer to Double Good on March 19, 1997. (Goode Dep. pp. 34-35.) At the time of delivery, Bowman provided to Goode several documents, among them an owner's manual that contained a warranty exclusion and limitation on the feed mixer load cells and scale. (Goode Dep. p. 42.) In addition, Mark Goode specifically signed an acknowledgement that he had read and understood the applicable warranty limitations and exclusions and that no other warranties, either express or implied, were made. See Plaintiff's Motion in Limine "Exhibit 7" attached hereto as "Exhibit C."

Defendant's memo, pp. 2, 3.

Shortly after the delivery of the new mixer wagon, it malfunctioned because of a broken load cell in its electronic scales. This problem was corrected by Franklin Welding when it installed a new load cell on March 26, 1997. During the interim, Double Good alleges in its amended motion for judgment that it sustained substantial damages, including injuries to its herd of dairy cows, because of the malfunctioning feed mixer.

This matter is presently before the court on Double Good's motion in limine and Franklin Welding's motion for summary judgment. In its motion in limine, Double Good requests an order excluding at trial any evidence of disclaimers of the implied warranties of merchantability and fitness for a particular purpose. In support of its motion, Double Good has submitted an initial memorandum and a response to the memorandum filed by Franklin Welding. Essentially, Double Good argues that the warranty registration form (pl's. memo. ex. 7) does not effectively disclaim under the Uniform Commercial Code, as adopted in Virginia, the implied warranties of merchantability and fitness for a particular purpose and any such evidence is therefore irrelevant.

Franklin Welding argues that it effectively disclaimed under the Uniform Commercial Code the implied warranties of merchantability and fitness for a particular purpose and effectively limited the remedy for any breach of warranty to the cost of repair or replacement.

These motions were argued by counsel during a hearing on November 9, 1999. During this hearing, counsel agreed that the facts material to the currently pending motions were not in dispute. Moreover, though § 8.01-420

of the Code of Virginia prohibits, absent agreement of the parties, consideration by the court of discovery depositions when ruling upon a motion for summary judgment, I understood counsel for both parties to have indicated such consent. At any rate, the arguments of counsel, and a comparison of the statement of facts in Double Good's memorandum with the statement of facts in Franklin Welding's memorandum indicate no factual dispute relevant to the pending motions. For purposes of ruling upon these motions, the above-stated facts will therefore be considered as stipulated.

In its memoranda, Double Good argues that the provisions of the warranty registration/service and safety checklist (pl's. memo. ex. 7) did not form a part of the basis of the bargain or contract for sale, and therefore, these provisions do not effectively limit or exclude the implied warranties of merchantability or fitness for a particular purpose. Franklin Welding argues in response that a "sale" as defined by § 8.2-106(1) of the Code of Virginia did not occur until March 19, 1997, the date of the delivery of the new mix wagon and the date when the warranty registration/service and safety checklist was signed. Therefore, according to Franklin Welding, the limitations and exclusions stated in the warranty registration/safety and service checklist and the warranty statement (pl's. memo. ex. 8) were a part of the actual bargain, and not post-contract disclaimers.

Section 8.2-314 of the Code of Virginia provides in pertinent part:

> Unless excluded or modified (§ 8.2-316), a warranty that goods shall be merchantable is implied *in a contract for their sale* if the seller is a merchant with respect to goods of that kind.

Section 8.2-314(1) of the Code of Virginia (emphasis added).

Section 8.2-315 provides:

> Where the seller *at the time of contracting* has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section (Section 8.2-316) an implied warranty that the goods shall be fit for such purpose.

Section 8.2-315 of the Code of Virginia (emphasis added).

Consequently, both §§ 8.2-314 and 8.2-315 indicate that implied warranties are created by the contract for sale, unless excluded or modified pursuant to statute. A contract for sale is defined under the Uniform Commercial Code as follows: " 'contract for sale' includes both a present sale

of goods and a contract to sell goods at a future time." Section 8.2-106(1) of the Code of Virginia.

In support of its argument that implied warranties do not arise until the time of delivery of goods and passage of title from seller to buyer, Franklin Welding cites as authority *Moore v. Allied Chemical Corp.*, 480 F. Supp. 364 (E.D. Va. 1979). However, I do not read *Moore* as support for Franklin Welding's position. Rather, *Moore* distinguishes a sale of goods from a sale of services. Nevertheless, even if an implied warranty does not become effective until delivery of goods, the terms of any such warranty, whether express or implied, are in my opinion defined by the contract for sale. In addition, contrary to the argument of Franklin Welding, § 8.2-401 of the Code of Virginia provides in pertinent part: "Each provision of this title with regard to the rights, obligations, and remedies of the seller, the buyer, purchasers, or other third parties applies irrespective of title to the goods except where the provision refers to such title."

Upon my review of the documents offered as exhibits, including the order form dated December 10, 1996 (pl's. memo. ex. 1), and the check payable to Franklin Welding dated December 12, 1996 (pl's. memo. ex. 5), it is abundantly clear that Franklin Welding agreed on December 10, 1996, to sell a feed mixer wagon to Double Good for $32,000.00; that Double Good agreed to purchase a feed mixer wagon from Franklin Welding for $32,000.00; that Franklin Welding ordered the feed mixer wagon from J-Star Industries on December 11, 1996; that Double Good paid Franklin Welding $23,300.00 on December 12, 1996, this being the entire amount due after allowance for the trade-in; and that Franklin Welding marked the order form (pl's. memo. ex. 1) "paid" on December 12, 1996. In my opinion the conclusion is inescapable that a contract for sale between Double Good and Franklin Welding, as a contract for sale is defined by § 8.2-106(1), was formed in December of 1996 and before delivery of the new mixer wagon on March 19, 1997.

Because this contract for sale makes no provision for exclusion or modification of an implied warranty of merchantability in accordance with § 8.2-316(2) of the Code of Virginia, the contract for the sale of the mixer wagon impliedly warranted that the new mixer wagon was merchantable, as merchantability is defined by § 8.2-314(2) of the Code of Virginia. In this regard, the United States Court of Appeals for the Fourth Circuit has stated: "Under Code § 8.2-314, a warranty of merchantability is implied in every contract for the sale of goods *unless* the warranty is 'excluded or modified' pursuant to § 8.2-316." *Buettner v. R. W. Martin & Sons*, 47 F.3d 116 (4th Cir. 1995) (emphasis in original).

The issue now to be addressed is the issue of whether the contract for sale was subsequently modified in accordance with the Uniform Commercial Code, as adopted in Virginia.

Concerning modification of contracts, generally, the Supreme Court of Virginia has stated: "Contracting parties may, of course, modify the terms of their contract by express mutual agreement." *Stanley's Cafeteria v. Abramson,* 226 Va. 68, 72, 306 S.E.2d 870 (1983); *Powell Mt. Joint Venture v. Moore,* 248 Va. 63, 66, 445 S.E.2d 135 (1994). Under the Uniform Commercial Code, such modifications do not require new consideration. In this regard, § 8.2-209(1) of the Code of Virginia states: "An agreement modifying a contract within this title needs no consideration to be binding." However, in a case under the Uniform Commercial Code, the Supreme Court of Minnesota stated: "Although parties may expressly modify a contract without a new consideration, it must be established that such an agreement was in fact made." *Cambern v. Hubbling,* 238 N.W.2d 622, 624 (Minn. 1976).

In various cases cited as authority by Double Good in its memoranda, courts have ruled that an effective, post-contract disclaimer of warranties does not result from mere delivery of a warranty disclaimer at the time of delivery of the goods promised. For example, the United States District Court for the Eastern District of Virginia has stated:

> Although Va. Code § 8.2-316 affords a seller a way to disclaim warranties, *Reibold v. Simon Aerials, Inc.,* 859 F. Supp. 193, 199 (E.D. Va. 194), they may not be disclaimed for the first time upon delivery of the goods promised without an agreed modification of the contract. *See, e.g. Bowdoin v. Showell Growers, Inc.,* 817 F.2d 1543, 1546-48 (11th Cir. 1987).

*Williams v. Gradall Co.,* 900 F. Supp. 442 (E.D. Va. 1998).

In *Bowdoin,* which is cited as authority in *Williams v. Gradall, supra,* Showell Growers purchased a high pressure spray rig from F.M.C. Corporation. Two weeks after the sale, the spray rig was delivered to Showell Growers with an instruction manual that contained a purported warranty disclaimer. Bowdoin subsequently borrowed the spray rig to perform duties imposed by a contract with Showell Growers, and the operator of the spray rig was severely injured. Bowdoin then filed suit alleging breaches of warranties of merchantability and fitness for a particular purpose.

The court in *Bowdoin* ruled the warranty disclaimer to be ineffectual under the Uniform Commercial Code and cited the following:

A number of courts have recognized that a written exclusion of implied warranties which is supplied after the contract of sale has been entered into is ineffectual, regardless of its conspicuousness, since it represents a unilateral attempt by the seller to limit warranty obligations which have already arisen.

*Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1547, n. 17 (11 Cir. 1987), quoting Annotation, Construction and Effect of UCC § 2-316(2) Providing that Implied Warranty Disclaimer Must be "Conspicuous," 73 ALR 3d 248, 260 (1976).

In my opinion, *Bowdoin* is distinguished on its facts from the case at hand. In *Bowdoin*, the warranty disclosure was never brought to the attention of the purchaser, and the purchaser did not sign an acknowledgement that he had read the warranty information.

In other cases cited by Double Good, essentially the same circumstances are found: delivery of a purported warranty disclaimer at the time of delivery of the goods promised, after formation of a contract of sale, with no evidence of the warranty having been brought to the purchaser's attention and without any signed acknowledgement by the purchaser that he had read the warranty information. In these cases, the courts ruled that under the Uniform Commercial Code, such purported warranty disclaimers were ineffectual as unilateral attempts by the seller to modify a preexisting contract of sale.

One exception cited by Double Good is *Cambern v. Hubbling*, 238 N.W.2d 622 (Minn. 1976). In *Cambern*, there was an acknowledgement of the warranty disclaimer signed by the purchaser; however, undisputed evidence established that the purchaser signed the acknowledgement on the hood of a pick-up truck, within seconds of its delivery, without having read the acknowledgement, and without the warranty disclaimer having been brought to his attention. The court ruled upon this undisputed evidence that there was no mutual assent to modification of the preexisting contract of sale.

When determining in the case at hand whether there was mutual assent by Double Good and Franklin Welding to modification of what I have found to be a preexisting contract of sale, I first look to the actual terms of the warranty registration/service and safety checklist (pl's. memo. ex. 7). In their memoranda and oral arguments, counsel for both parties agree that this warranty registration was received and signed by Double Good and that the warranty statement (pl's. memo. ex. 8) was delivered by Franklin Welding to Double Good at the time of delivery of the feed mixer wagon. In the acknowledgement immediately above the signatures of the parties on the warranty registration, the first clause acknowledges receipt of the "Service and

Safety Check" and the owner's manual. In the second clause of the acknowledgement, the following is stated: "I have read and understand the nature, extent, limitations, and exclusions of the manufacturer's warranty." Clause three of the acknowledgement states that "there were no and are no other representation or warranties, either expressed or implied by anyone."

In my opinion, clause 2 expressly alerts Double Good to the existence of information extraneous to the warranty registration/safety and service checklist that directly affects the warranties accompanying the sale, and Double Good, as purchaser, acknowledges by its signature that this information has been read and understood. Because of the explicit language of this acknowledgement, which, according to the parties, was received and signed by Double Good, this case, in my opinion, is factually distinguished from cases cited by Double Good in its memoranda. Both parties signed the warranty registration/service and safety checklist indicating their assent, and there is no argument of bad faith on the part of Franklin Welding. *See*, U.C.C. § 2-209, Official Comment 2, quoted in annotations to § 8.2-209. ("Subsection (1) provides that an agreement modifying a sales contract needs no consideration to be binding. However, modification made thereunder must meet the test of good faith imposed by this Act.") It is therefore my opinion that the preexisting contract of sale between Double Good and Franklin Welding was modified by mutual assent and in accordance with the provisions of the Uniform Commercial Code, as adopted in Virginia.

It is now necessary to determine the nature and extent of the modifications to the preexisting contract of sale. As already stated, the parties, by counsel, agree that the warranty statement (pl's. memo. ex. 8) was delivered to Double Good, by Franklin Welding, at the time of delivery of the feed mixer wagon. This warranty statement includes an express three-year warranty to correct by repair or replacement any defect in material or workmanship in any part of electronic scale products.

Under the heading "*EXCLUSION OF OTHER WARRANTIES AND REMEDIES*," which is printed in large capital letters and underlined, the following is stated:

THE FOREGOING SETS FORTH THE ONLY GUARANTEE OR WARRANTY APPLICABLE TO THIS TRANSACTION, AND SUCH WARRANTY IS GIVEN EXPRESSLY AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL SUCH IMPLIED WARRANTIES WHICH EXCEED OR DIFFER FROM THE WARRANTY SET FORTH HEREIN ARE HEREBY DISCLAIMED BY DIGI-STAR.

Pl's. memo. ex. 8.

This purported warranty disclaimer is printed in capital letters and in letters larger than those of other provisions of the warranty statement.

Concerning exclusion or modification of warranties, § 8.2-316(2) provides in pertinent part:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous ... .

Section 8.2-316(2) of the Code of Virginia.

Section 8.1-201(10) provides in pertinent part:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color ... Whether a term or clause is "conspicuous" or not is for decision by the court.

Section 8.1-201(10) of the Code of Virginia.

As to the implied warranty of merchantability, the purported disclaimer mentions the word "merchantability," and the writing itself is conspicuous in accordance with § 8.1-201(10). I therefore rule that the warranty statement (pl's. memo. ex. 8), when considered in conjunction with the acknowledgement on the warranty registration/service and safety checklist (pl's. memo. ex. 7), effectively disclaims under the Virginia Uniform Commercial Code the implied warranties of merchantability and fitness for a particular purpose.

The warranty statement continues by stating the following:

> Except where such limitations and exclusions are specifically prohibited by applicable law, the SOLE AND EXCLUSIVE REMEDY AGAINST DIGI-STAR SHALL BE FOR THE REPAIR OR REPLACEMENT OF DEFECTIVE PARTS AS PROVIDED, AND NO OTHER REMEDY (INCLUDING BUT NOT LIMITED TO INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES FOR LOST PROFITS, LOST SALES, INJURY TO PERSONS OR PROPERTY, OR ANOTHER LOSS) SHALL BE AVAILABLE.

(Pl's. memo. ex. 8.)

The applicable portion of this statement is printed in capital letters and printed in letters larger than those of other provisions of the warranty statement.

Section 8.2-719(1) provides in pertinent part:

Subject to the provisions of subsections (2) and (3) of this section and of the preceding section [§ 8.2-718] on liquidation and limitation of damages

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this title and may limit or alter the measure of damages recoverable under this title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

Section 8.2-719(1) of the Code of Virginia.

Language which purports to limit a remedy in accordance with § 8.2-719 need not be conspicuous. In this regard, the Supreme Court of Virginia has stated:

Unlike Code § 8.2-316(2) which requires conspicuous language to exclude or modify the implied warranties of merchantability or fitness for a particular purpose, Code § 8.2-719, which expressly recognizes that the contracting parties may bargain for a limitation of remedy, contains no such requirement.

*Flintcote v. Wilkinson*, 220 Va. 564, 568-69, 260 S.E.2d 229 (1979).

I therefore rule that the language stated in the warranty statement (pl's. memo. ex. 8), when considered in conjunction with the signed acknowledgement on the warranty registration/service and safety checklist (pl's. memo. ex. 7), effectively limits the remedy for breach of warranty in accordance with § 8.2-719 of the Code of Virginia. Consequently, the exclusive remedy available to Double Good for breach of warranty is repair or replacement of any defect in material or workmanship in any part of electronic scales products. It is agreed by the parties that the defective load cell in the feed mixer wagon was repaired by Franklin Welding on March 26, 1997. This being the sole and exclusive remedy available to Double Good and

there being no material issue of fact genuinely in dispute, Franklin Welding's motion for summary judgment is granted, and the amended motion for judgment is dismissed with prejudice.