[Civ. No. 42842. Second Dist., Div. Five. Mar. 13, 1975.]

WILLIAM A. DORMAN, Plaintiff, Cross-defendant and Appellant, v. INTERNATIONAL HARVESTER COMPANY et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Charles A. Laufer for Plaintiff, Cross-defendant and Appellant.

Pacht, Ross, Warne, Bernhard & Sears, Ira H. Lurvey, Virgil Roberts and Henry J. Shames for Defendants, Cross-complainants and Appellants.

OPINION

STEPHENS, J.—This case involves an action arising out of the purchase of a tractor and backhoe by the appellant and cross-respondent, William A. Dorman (hereinafter, Dorman) from the respondents and cross-appellants, International Harvester Company (hereinafter, I.H.) and International Harvester Credit Corporation.[1] Dorman alleged two causes of action: (1) for breach of express and implied warranties of merchantability and fitness for particular purpose, seeking damages "in the sum of $7,729.98, which sum includes monies paid to the defendants and each of them, on account of the contract price . . . and loss of earnings and business sustained by the plaintiff to date"; (further loss was left open for proof); (2) for "rescission." At the time of trial, Dorman dismissed his cause of action for rescission and proceeded to trial on the breach of warranty cause of action.[2]

---

[1] This transaction does not fall within the protection of the Rees-Levering Motor Vehicle Sales and Finance Act (Civ. Code, §§ 2981-2984.3), which is limited to the sale of a motor vehicle which is purchased primarily for personal or family use and not for business or commercial use.

[2] Insofar as Dorman's dismissal of his second cause of action is concerned, the Supreme

The jury returned a verdict for Dorman in the sum of $19,500 on the complaint, and against the cross-complainants on the cross-complaint (which sought recovery of the equipment). After entry of the verdict, I.H. filed motions for a new trial and for judgment notwithstanding the verdict on the complaint and cross-complaint. The trial court denied the motion for a new trial, granted the motion for judgment notwithstanding the verdicts, and reduced the verdict from $19,500 to $7,233.68.[3] It also denied Dorman his costs.

Dorman appeals from the judgment entered on the jury verdict, and from the judgment notwithstanding the verdict. I.H. cross-appeals from the portion of the judgment notwithstanding the verdict which awards Dorman $7,233.68 on the complaint, from the portion of the judgment notwithstanding the verdict which failed to award I.H. attorney fees on its cross-complaint, and from the original judgment on the complaint and cross-complaint.

FACTS

Dorman entered into a "Retail Instalment Conditional Sales Contract" with I.H. purportedly on October 31, 1968 (he testified that he executed a second contract on November 3) to purchase a new tractor and backhoe for $12,912.26, including finance charges, and had paid a total of $7,233.68 on the contract. Dorman purchased this equipment for use in his earth-grading business and took delivery on November 4, 1968. The evidence adduced at trial shows that Dorman experienced problems with the tractor from the day he took delivery. The tractor broke down on numerous other occasions during the period of November 7, 1968 to August 21, 1969 and it had to be returned to I.H. for repairs. On August 13, 1969, Dorman sent a notice of rescission and breach of warranty of I.H., and filed suit on December 19, 1969.

*Disclaimer*

At the outset of the trial, the court considered the issue of whether the retail instalment conditional sales contract contained a valid dis-

---

Court in *Seely* v. *White Motor Co.* 63 Cal.2d 9, 14 [45 Cal.Rptr. 17, 403 P.2d 145] indicated that the rule of election of remedies has not been adopted by California. (See Cal.U.Com. Code, § 2608.)

The California Code comment to Commercial Code section 2608 states: "This section introduces as a remedy 'revocation of acceptance'. This replaces the remedy of 'rescission' under former Civil Code § 1789(1) (d) as a buyer's remedy for breach of warranty under the USA."

[3] We need not concern ourselves as to how the jury arrived at the sum of $19,500 in its verdict since reversal is required on the court's erroneous rulings relative to consequential damages and the validity of the disclaimer.

claimer of implied warranties. The disclaimer in question is shown in its context in the facsimile below (appearing after paragraph "9. Terms of Payment"):

| STA. INSTALMENT CONDITIONAL SALE CONTRACT FOR FARM AND INDUSTRIAL EQUIPMENT | DATE 10/31/68 | CONTRACT NO. D 798 A19 |
|---|---|---|

PURCHASER (LAST NAME FIRST) *Bill Dorman* 899 4500 SELLER *IH Sales & Service*

ADDRESS *12470 Osborne* CITY COUNTY STATE *Calif* ZIP CODE ADDRESS *Van Nuys Calif*

Purchaser hereby purchases, and seller hereby sells, subject to all terms, conditions and agreements contained herein including the ADDITIONAL PROVISIONS printed on the reverse side hereof, the following described property, delivery, inspection and acceptance of which are hereby acknowledged by purchaser:

| QU. | N/U | DESCRIPTION (SHOW ALL SERIAL AND MOTOR NUMBERS) | | CASH SALE PRICE |
|---|---|---|---|---|
| 1 | N | *International 3616 Diesel w/3141* | | $ |
| | | *Backhoe with Hydrashuttle Transmission* | | |
| | | *12"-18"-24" Bucket 16.9 x 28 Tires* | | |
| | | *Front weights 900 x 16 Truck front* | | |
| | | *S/N 1695* | | |

| TRADE-IN | | TOTAL | $ 14796 60 |
|---|---|---|---|
| 1 | *2606 Diesel* | ADD SALES OR USE TAX | 687 80 |
| | *w/train toy* | 1. TOTAL CASH SALE PRICE | $ 15684 40 |
| | *12-18-24 Bucket* | 2. DOWN PAYMENT: | |
| | | CASH $ | |
| | | TRADE-IN ALLOWANCE 4500 00 | X X |
| | | TOTAL DOWN PAYMENT | $ 4500 00 |
| ALLOWANCE | $ 4500 00 | 3. UNPAID CASH BALANCE (1 LESS 2) | $ 11184 40 |

| SCHEDULE OF INSTALMENTS | | | | | 4. OTHER CHARGES DESCRIBE: ICC— | $ 5 00 |
|---|---|---|---|---|---|---|
| | AMOUNT | DUE DATE | | AMOUNT | DUE DATE | |
| 1 | 500 00 | 12/1/68 | 9 | | | 5. PRINCIPAL BALANCE (TOTAL OF 3 AND 4) $ 11189 40 |
| 2 | 500 00 | 1/1/69 | 10 | *WAIVER OF* | | |
| 3 | 500 00 | 2/1/69 | 11 | *FINANCE* | 24 | 6. FINANCE CHARGE (TIME PRICE DIFFERENTIAL) 1722 80 |
| 4 | 500 00 | 3/1/69 | 12 | 2000— | | |
| 5 | | | 13 | | | 7. TIME BALANCE (TOTAL OF 5 AND 6) $ 12912 20 |
| 6 | | | 14 | | | |
| 7 | | | 15 | | | 8. TIME SALE PRICE (TOTAL OF 2 AND 7) |
| 8 | | | 16 | | | $ 363 74 |

9. TERMS OF PAYMENT: Purchaser agrees to pay the Time Balance in *4* instalments of $ *500* each, and *30* instalments of $ *363.74*, each, and ⸺ instalments of $⸺, payable on the same day of each successive month commencing *12/1* 19 *68* or as indicated in the Schedule of Instalments printed hereon, at office of the seller, or if this contract is assigned, assignee of seller. Purchaser agrees to pay all expenses including reasonable attorney's fees, court costs and out-of-pocket expenses incurred in the collection, by suit or otherwise, of any amount payable under this contract. After maturity each instalment shall draw interest at the rate of *10* percent per annum. (In South Dakota purchaser agrees to pay a delinquency charge on each instalment in default for a period of 10 days or more in an amount of 5% of each instalment or $5.00, whichever is less.)

The equipment covered hereby is sold subject only to the applicable manufacturer's standard printed warranty, if any, in effect at the date hereof, receipt of a copy of which is hereby acknowledged, and no other warranties, express or implied, including without limitation, the implied warranties of *merchantability and fitness for a particular purpose* shall apply.

Purchaser agrees that this contract, including the ADDITIONAL PROVISIONS printed on the reverse side hereof, which he has read and to which he agrees, contains the entire agreement relating to the instalment sale of said property and supersedes all previous contracts and agreements between purchaser and seller relating to the order or sale of said property.

| THIS CONTRACT IS NOT BINDING UPON SELLER, UNLESS SIGNED BY THE STORE MANAGER OF SELLER OR OWNER. | Purchaser acknowledges receipt of an exact completed copy of this contract. |
|---|---|

| APPROVED FOR SELLER | | PRINT OR TYPE NAMES BENEATH SIGNATURE. ALL SIGNATURES MUST BE WITNESSED. | | |
|---|---|---|---|---|
| SIGNATURE *Jem L Baker* | BY *Bill Hickey* TITLE | WITNESS | PURCHASER X *William A Rhoman* | |
| OFFICIAL TITLE *STORE MANAGER* | | | BY PURCHASER | |
| | | | BY | TITLE |

FH-1203-D (PAGE 2) FORM APPROVED 11-1-68

The court concluded that the disclaimer provision was sufficiently conspicuous to constitute a valid disclaimer of the implied warranties of

merchantability[4] and fitness for particular purpose[5] pursuant to California Uniform Commercial Code section 2316.[6] The court thus limited the issues to be determined at trial to whether I.H. had fulfilled its standard printed warranty [7]

---

[4]California Uniform Commercial Code section 2314, in pertinent part, reads: "(1) Unless excluded or modified (Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . (2) Goods to be merchantable must be at least such as . . . (c) Are fit for the ordinary purposes for which such goods are used . . . ."

[5]California Uniform Commercial Code section 2315, in pertinent part, reads: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under [§ 2316] an implied warranty that the goods shall be fit for such purpose."

[6]California Uniform Commercial Code section 2316, in pertinent part, reads: "(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subdivision (3) ['as is' sales], to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

[7]This warranty was contained on the reverse side of a "Retail Order Form" (Exh. 2). This document was admitted in evidence in part only to show what the warranty was at the time in question. It reads: "International Harvester Company warrants to the original purchaser each item of new farm and industrial equipment bearing either the identification 'McCormick' or 'International', or a combination thereof, to be free from defects in material and workmanship under normal use and service. The obligation of the Company under this warranty is limited to repairing or replacing as the Company may elect, free of charge and without charge for installation, at the place of business of a dealer of the Company authorized to handle the equipment covered by this warranty, any parts that prove, in the Company's judgment, to be defective in material or workmanship within twelve months or 1500* hours of use, whichever occurs first, after delivery to the original purchaser.

"This warranty shall not apply to any item which shall have been operated in a manner not recommended by the Company nor which shall have been repaired, altered, neglected or used in any way which in the Company's opinion adversely affects its performance.

"This warranty and the Company's obligation thereunder is in lieu of all warranties, express or implied, including without limitation, the implied warranties of *merchantability and fitness for particular purpose,* all other representations to the original purchaser and all other obligations or liabilities, including liability for incidental and consequential damages on the part of the Company or the seller with respect to the sale or use of the items warranted.

"International Harvester Company makes no representations or warranties of any character as to tires and tubes nor to any item of new equipment not specifically covered by the first paragraph of this warranty, whether or not sold on or for use with such warranted items.

## CONTENTIONS

Dorman contends that the trial court erred in its ruling on the validity of the disclaimer provision for the following reasons: (1) the disclaimer provision is not "conspicuous"; (2) the disclaimer provision as interpreted by the court is unconscionable; and (3) the court did not allow the introduction of parol evidence of warranties consistent with the contract provision as well as the parties' interpretation of the provision by their subsequent actions.

*(1) Conspicuousness*

It was well settled in California under pre-Commercial Code law that a provision disclaiming implied warranties was to be strictly construed (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 694 [268 P.2d 1041]) and was ineffectual unless the buyer assented to the provision or was charged with notice of the disclaimer before the bargain was completed. (*Id.* at p. 693; *Klein* v. *Asgrow Seed Co.*, 246 Cal.App.2d 87, 97 [54 Cal.Rptr. 609]; *Hayman* v. *Shoemake*, 203 Cal.App.2d 140, 157 [21 Cal.Rptr. 519]; *India Paint Co.* v. *United Steel Prod. Corp.*, 123 Cal.App.2d 597, 608 [267 P.2d 408].) At trial, Dorman testified that he did not sign the contract dated October 31, 1968, but that he did read it on that date; that on November 3, 1968, he signed but did not read a contract represented to him to be the same as the one he had read on October 31; and that he did not receive a copy of the standard manufacturer's warranty at the time he signed the contract even though the contract contained a clause stating that he acknowledged receipt of the warranty. Although Dorman did not assent to the disclaimer provision and did not read the contract at the time he signed it, the court concluded that the provision was conspicuous and that he should be charged with notice of the disclaimer.

California Uniform Commercial Code section 2316, subdivision (2), provides that an exclusion of the implied warranty of merchantability "in case of a writing must be conspicuous," and that an exclusion of the implied warranty of fitness for particular purpose "must be by a writing and conspicuous." The code defines "conspicuous" as "so written that a

---

"No person is authorized to give any other warranties or to assume any other liability on the Company's behalf unless made or assumed in writing by the seller."

In *Seely* v. *White Motor Co., supra* (at p. 14), the court held that under a standard manufacturer's warranty, if "the warrantor repeatedly fails to correct the defect as promised, it is liable for the breach of that promise as a breach of warranty." (See also *Rose* v. *Chrysler Motors Corp.*, 212 Cal.App.2d 755, 762-763 [28 Cal.Rptr. 185, 99 A.L.R.2d 1411]; *Orange Motors of Coral Gables* v. *Dade Co. Dairies* (Fla.App. 1972) 258 So.2d 319, 321.

reasonable person against whom it is to operate ought to have noticed it. A printed heading in capital letters (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. . . . Whether a term or clause is 'conspicuous' or not is for decision by the court." (§ 1201, subd. (10).)[8]

There is no statutory counterpart of section 1201, subdivision (10), in pre-code law; nor have we found any California cases under the code which have dealt with this section. Therefore, we must rely predominantly on the official comments to sections 2316 and 1201, subdivision (10), and to foreign law. The official comment to subdivision (10) of section 1201 states that the "test [of conspicuousness] is whether attention can reasonably be expected to be called to [the disclaimer provision]." (Cf. *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].) We must examine this comment in the light of the official comment to section 2316, which states: "This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from *unexpected* and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." (Italics added.) In other words, section 2316 seeks to protect the buyer from the situation where the salesman's "pitch," advertising brochures, or large print in the contract, giveth, and the disclaimer clause—in fine print—taketh away.

 Here, the disclaimer provision appears in close proximity to where Dorman signed the contract, but emphasized (italicized) the implied-warranties wording *"merchantability and fitness for particular purpose shall apply."* Although the disclaimer provision was printed in a slightly larger type face than was the preceding paragraph of the contract, it was not in bold face type, and we are of the opinion that it was not sufficiently conspicuous to have negated the implied warranties, particularly where no "standard printed warranty" was in fact given to Dorman at the time of execution of the contract.[9] The slightly larger type face and location of the disclaimer paragraph are not conclusive. As stated by the court in *Woodruff* v. *Clark County Farm Bureau Coop. Assn.*

---

[8]Under the circumstances of this case, the appellate court may determine the issue of conspicuousness of contract provision in the same manner as does a trial court. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

[9]There is no indication that a copy of a "Retail Order Form" containing the standard manufacturer's warranty was ever given to Dorman.

(Ind.App. 1972) 286 N.E.2d 188, 198 (quoting from *Greenspun* v. *American Adhesives, Inc.* (E.D.Pa. 1970) 320 F.Supp. 442), " '[w]hile there is some slight contrasting set-off, this is not sufficient. *A provision is not conspicuous when there is only a slight contrast* with the balance of the instrument.' " The instant disclaimer does not reach that level of conspicuousness so as to exclude the right of the buyer to implied warranties which are an integral part of the transaction. (*Henningsen* v. *Bloomfield Motors, Inc.* (1960) 32 N.J. 358 [161 A.2d 69, 76, 75 A.L.R.2d 1].) It thus violated the underlying rationale of section 2316 as set forth in the official comment of protecting the buyer from an unbargained for limitation in the purchase of a product. In order to have a valid disclaimer provision, it must be in clear and distinct language and prominently set forth in large, bold print in such position as to compel notice. (§ 1201, subd. (10).) In the instant contract, the only large size type (in relation to other type on the page) that may satisfy these criteria is that used for the words "ADDITIONAL PROVISIONS" on the signature page (in a reference to matters on the reverse side of the contract which are extraneous to the warranties disclaimer). Though the size of the type in those words may be large enough, the remainder of the provision is insufficiently "conspicuous." The contract here also failed to have an adequate heading at the beginning of the disclaimer provision, such as "DISCLAIMER OF WARRANTIES," to call the buyer's attention to the disclaimer clause.

The attempted disclaimer of implied warranties in the instant case is ineffective for another reason. Construing the language of the provision strictly (*Burr* v. *Sherwin Williams Co., supra,* at p. 694), the construction of the wording is ambiguous and could easily be misleading. A purchaser glancing at the provision would reasonably observe the *italicized* language, which reads: *"merchantability and fitness for the particular purpose shall apply,"* and would be lulled into a sense of security. This is directly contrary to the actual intent of the provision. "An implied warranty . . . must be disclaimed by the most precise terms; in other words, so clear, definite and specific as to leave no doubt as to the intent of the contracting parties." (*Boeing Airplane Company* v. *O'Malley* (8th Cir. 1964) 329 F.2d 585, 593.)

Moreover, the manufacturer's standard printed warranty (which also endeavored to limit the warranties and the introduction of consequential damages) was not included in the contract which Dorman signed on November 3, 1968. It was on the reverse side of the purchase order, a separate document not shown to have been signed by Dorman or delivered to him at any time. A disclaimer of warranties must be

specifically bargained for so that a disclaimer in a warranty given to the buyer *after* he signs the contract is *not* binding. (*International Harvester Company* v. *Pike* (1971) 249 Ark. 1026 [466 S.W.2d 901, 907]; *Zabriskie Chevrolet, Inc.* v. *Smith* (1968) 99 N.J. Super. 441 [240 A.2d 195, 199].) " 'A limitation of warranties to be effective must have been bargained for so that a limitation stated in printed matter given by the seller to the . buyer after the sale was completed is not binding; as where the automobile dealer, after the sale, gave the buyer the manufacturer's printed material which contained the warranty limitation.' " (*Rehurek* v. *Chrysler Credit Corporation* (Fla.App. 1972) 262 So.2d 452, 455 [54 A.L.R.3d 1210, 1215].) The disclaimer of consequential damages which was included in the manufacturer's standard warranty is also not binding (Cal.U.Com. Code, § 2719, subd. (3); *Rose* v. *Chrysler Motors Corp., supra,* 212 Cal.App.2d 755, 763) and cannot be invoked to prevent appellant from introducing evidence as to his consequential damages. (*Gramling* v. *Baltz* (1973) 253 Ark. 352, 361 [485 S.W.2d 183, 188-189]).[10] On retrial, proof of consequential damages should be permitted.

We conclude that the disclaimer was insufficiently conspicuous to inform a reasonable buyer that he was waiving his right to have a quality product. As the Supreme Court of the State of Washington succinctly stated in *Berg* v. *Stromme* (1971) 79 Wn.2d 184 [484 P.2d 380, 385]: "The purported disclaimers of warranty in the conditional sale contract form and the waiver of warranty in the purchase order form highlight the absurdity of a rule of law which elevates these bland and substantially meaningless terms and conditions above the individually and expressly negotiated terms and conditions, and gives them controlling effect over specifically agreed upon items and conditions of the contract. To adhere to such a rule means that the law presumes that the buyer of a brand new automobile intends to nullify in general all of the things for which he has

---

[10]Uniform Commercial Code section 2714, subdivision (3): "In a proper case any incidental and consequential damages under the next section may also be recovered."

Uniform Commercial Code section 2715: "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach. (2) Consequential damages resulting from the seller's breach include (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) Injury to person or property proximately resulting from any breach of warranty."

The attempted disclaimer of warranties in the standard manufacturer's warranty is also ineffective because it likewise is not conspicuous. *(International Harvester Company* v. *Pike, supra.)* In *International Harvester,* the court invalidated an almost identical warranty as is involved in the present case.

specifically bargained and will pay. We would presume the buyer does just the opposite."

(2) *Unconscionability*

Accordingly, we need not reach the issue of whether the disclaimer provision of implied warranties is unconscionable under California common law.[11] (See *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 879 [27 Cal.Rptr. 172, 377 P.2d 284]; *Delta Air Lines, Inc.* v. *Douglas Aircraft Co.,* 238 Cal.App.2d 95, 102 [47 Cal.Rptr. 518]; cf. *Seely* v. *White Motor Co., supra,* at p. 19.)

The judgment on the cross-complaint must necessarily be reversed so as to place the parties in the same position as they were at the commencement of the original trial.

Since we reverse the judgments on both the complaint and cross-complaint, we need not analyze the contentions raised in the cross-appeal.

The judgments on the complaint and cross-complaint are reversed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied April 11, 1975, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied May 8, 1975.

---

[11]California did not adopt Uniform Commercial Code section 2-302, which provides:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."