IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2007 Session

## WELLS FARGO FINANCIAL LEASING, INC. v. MOUNTAIN RENTALS OF GATLINBURG, INC.

Appeal from the Chancery Court for Sevier County
No. 04-2-047     Telford E. Forgety, Jr., Chancellor

No. E2007-00480-COA-R3-CV - FILED JANUARY 24, 2008

Wells Fargo Financial Leasing, Inc., brought this action against Mountain Rentals of Gatlinburg, Inc., to collect rent under an equipment lease. The trial court granted summary judgment to Wells Fargo, and Mountain Rentals appealed. After careful review, we hold that the rental agreement is an enforceable finance lease and that Mountain Rentals's obligation to pay rent was irrevocable and independent. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO JR. and D. MICHAEL SWINEY, JJ., joined.

Douglas E. Taylor, Sevierville, Tennessee, for the appellant, Mountain Rentals of Gatlinburg, Inc.

Kenny L. Saffles, Knoxville, Tennessee, for the appellee, Wells Fargo Financial Leasing, Inc.

### OPINION

#### I. Background

In June of 2000, Mountain Rentals, Inc. ("Mountain Rentals") entered into a finance lease agreement with Telimagine, Inc., ("Telimagine") for the rental of telecommunications equipment. The agreement provided for Mountain Rentals to pay 60 monthly payments of $457 each for rental of certain specified equipment and was amended three times to include additional equipment. As of July 15, 2002, the parties had increased the monthly payment amount to $1,704. The agreement was termed a "finance lease" governed under Article 2A of the Uniform Commercial Code ("UCC") and included, inter alia, provisions that the system was rented "as is" with no warranties; that Mountain Rentals waived all rights and remedies; that Telimagine could assign the agreement and give the new lessor the same rights and benefits Telimagine had at the time of the contract, but none

of Telimagine's obligations; and that Mountain Rentals acknowledged that Telimagine had no responsibilities or obligations regarding the service or maintenance of the system. In addition, Mountain Rentals signed a certificate acknowledging its acceptance of the system and agreeing that payment of rent was due Telimagine without deduction, setoff, or abatement.

Telimagine later assigned its rights under the agreement to Conseco Finance Vendor Services, Inc., and Wells Fargo Financial Leasing, Inc., became the successor in interest following Conseco's bankruptcy. Mountain Rentals subsequently became dissatisfied with service and maintenance of the equipment and ceased making rental payments to Wells Fargo. Wells Fargo sued Mountain Rentals alleging that Mountain Rentals had defaulted on the agreement and seeking the remaining balance of all rental payments, discounted to present value, and attorney's fees and costs pursuant to the agreement. Mountain Rentals joined Sprint Communications Company, L.P., and Telimagine in the suit, but they were later dismissed as parties. The trial court entered an order granting Wells Fargo's motion for summary judgment and awarded judgment in its favor in the amount of $75,748.93.

## II. Issues

Mountain Rentals argues in this appeal that the trial court erred in finding the finance lease agreement to be valid, as a matter of law, because the lease is ambiguous, unconscionable, contrary to public policy, a contract of adhesion, and not the result of a meeting of the minds between the parties. Wells Fargo contends that the trial court did not err and that it is entitled to an award for its attorney's fees and costs on appeal pursuant to the parties' agreement.

## III. Analysis

### A. Standard of Review

Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When reviewing a motion for summary judgment, this Court is required to view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Because a trial court's decision to grant a motion for summary judgment is solely a matter of law, it is not entitled to a presumption of correctness. *See Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Consequently, our task is to review the record to determine if the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been met. *Staples*, 15 S.W.3d at 88.

### B. Validity of the Finance Lease

Mountain Rentals does not dispute that it ceased making rental payments to Wells Fargo, but

argues that it should not be required to comply with the agreement because Telimagine failed to service and maintain the equipment. Mountain Rentals contends that since it is precluded from asserting its breach of warranty claims and defenses against Wells Fargo, the agreement is unconscionable, ambiguous, contrary to public policy, a contract of adhesion, and not the result of a meeting of the minds between the parties and is therefore unenforceable.

Mountain Rental's arguments are without merit because the lease agreement is not an ordinary lease, but a finance lease which makes Mountain Rental's obligation to pay rent irrevocable and independent upon its acceptance of the goods. It is undisputed that the lease was for non-consumer goods and the goods were accepted by Mountain Rentals. Therefore, the obligation of Mountain Rentals to pay rent is absolute even if, after acceptance, it becomes dissatisfied with the goods or with its lessor's performance under the agreement. Our conclusion is supported by statutory and case law, as well as the terms of the agreement.

We are guided by Florida law because the parties agreed to be bound by the law of the state of Florida. However, the result we reach would be the same if Tennessee law applied because the law in Florida and Tennessee law is virtually identical and both are based on Article 2 of the UCC. Florida law defines a finance lease as follows:

> (1)(g) "Finance lease" means a lease with respect to which:
>
> > 1. The lessor does not select, manufacture, or supply the goods;
> >
> > 2. The lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and
> >
> > 3. One of the following occurs:
> >
> > > (a) The lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract;
> > >
> > > (b) The lessee's approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract;
> > >
> > > (c) The lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of a third party, such as the

manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or

(d) If the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing:

(I) Of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person.

(II) That the lessee is entitled under this chapter to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods.

(III) That the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

Fla. Stat. § 680.1031(1)(g).[1]

The parties' agreement contained specific language wherein the parties agreed that their lease was a finance lease:

You agree that this Agreement is a "Finance Lease" under Article 2A of the Uniform Commercial Code, that is you acknowledge that: (a) we did not select, manufacture or supply the System, but we did purchase the System for rent to you; and (b) we have given you the name of the supplier of the System you are renting from us and therefore, the supplier is set forth in this Agreement or on the attached

_____

[1] Tennessee's comparable statute is Tenn. Code Ann. § 47-2A-103 (g).

schedule. We hereby notify you that you may have rights under the supply contracts and that you may contact the supplier for a description of those rights or any warranties. To the extent permitted by applicable law, you waive any and all rights and remedies conferred upon you under UCC Section 2A-303 and 2A-508 through 522.

The determination that the lease is a finance lease is important because the hallmark of a finance lease is the aptly described "hell or high water" provision that is made applicable by Fla. Stat. § 680.407[2] which provides:

(1) In the case of a finance lease that is not a consumer lease, the lessee's promises under the lease contract become irrevocable and independent upon the lessee's acceptance of the goods.

(2) A promise that has become irrevocable and independent under subsection (1):

(a) Is effective and enforceable between the parties, and by or against third parties including assignees of the parties.

(b) Is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs.

(3) This section shall not affect the validity under any other law of a covenant in any lease contract making the lessee's promises irrevocable and independent upon the lessee's acceptance of the goods.

The effect of this provision is to require the lessee to pay the finance lessor "come hell or high water" or in more legal terms - even if the lessor's performance after the lessee's acceptance of the goods is not in accordance with the lease contract. Numerous courts have enforced the "hell or high water" provision of the statute and awarded recovery to the finance lessor. *See **Leasetec Corp. v. Orient Sys., Inc.***, 85 F. Supp. 2d 1310 (S.D. Fla. 1999) (providing that "hell or high water" clauses requiring lessees to continue making payments to equipment lease finance company regardless of condition of equipment were enforceable, despite lessor's default), ***De Lage Landen Financial Servs., Inc., v. Cricket's Termite Control, Inc.***, 942 So.2d 1001 (Fla Dist. Ct. App. 2006) (stating that "the Uniform Commercial Code makes covenants in a finance lease irrevocable and independent, due to the function of the finance lessor in a three-party relationship" upon the lessee's acceptance of the goods); *see also **Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp**.*, 419 F.3d 107 (2d Cir. 2005) (holding that assignee was entitled to enforce equipment lease containing

---

[2] Tennessee's comparable statute is Tenn. Code Ann. § 47-2A-407.

"hell or high water" clause notwithstanding lessor's default on its obligations), ***Siemens Credit Corp. v. Newlands***, 905 F. Supp. 757 (N.D. Cal. 1994) (holding that lessee was liable to lessor under a commercial finance lease which was found to be valid and not unconscionable), ***Wells Fargo Bank Minn., Nat'l Ass'n v. B.C.B.U.***, 49 Cal. Rptr.3d 324 (Cal. Ct. App. 2006) (providing that assignee of finance lease could enforce wavier of defenses clause against lessee of business equipment, even though lessee claims there was no meeting of the minds, that a material alteration voided the lease, and that the lease was cancelled), ***C and J Leasing Corp. v. Hendren Golf Mgmt.***, 728 N.W.2d 852 (Iowa Ct. App. 2007) (holding that the finance lease for commercial goods was not unconscionable), ***GreatAmerica Leasing Corp. v. Star Photo Lab, Inc.***, 672 N.W.2d 502 (Iowa Ct. App. 2003) (holding that hell or high water provision in lease and Uniform Commercial Code precluded lessee from ceasing payments under lease, even though lessee may have encountered problems with leased software and equipment, where lease was a finance lease and software and equipment were accepted by lessee), ***Canon Fin. Servs., Inc. v. Medico Stationery Servs., Inc***., 300 A.D.2d 66 (N.Y. App. Div. 2002) (holding that lessor was entitled to summary judgment under finance lease despite lessee's complaints about the leased copier), ***D&D RV and Auto, LLC, v. Rainmaker Software, Inc.***, No. CA2006-02-006, 2007 WL 1121298 (Ohio Ct. App. 2007) (holding that the lessee "had no right to cease payments under the lease agreement despite its dissatisfaction with the performance of the software").

The statutory provision supplements the specific language of the agreement, which requires Mountain Rentals to pay rental payments without deduction, setoff or abatement, that the equipment is sold "as is" with no warranties from the lessor, and that all rights and remedies are waived.

The result we reach is not inequitable. A finance lease is a method to finance the acquisition of goods. Normally, a lender who enables a buyer to acquire the goods is not subject to a refusal by the buyer to repay the loan if the goods are not what the buyer expected. Similarly, a finance lessee cannot refuse to pay a lessor an agreed payment. William D. Hawkland, 3 *Hawkland UCC Series*, § 2A-209:01 (Frederick K. Miller ed., 2006). The parties entered into a financial transaction in which the lessor is lending money and dealing largely in paper, not goods. 2 White & Summers, *Uniform Commercial Code* § 13-3 (4th ed. 2006). The statutory scheme of finance leases benefits both parties. The lessor gains certainty and security for its extension of credit. The lessee forgoes its warranty claims against the lessor but becomes a statutory third party beneficiary of the supply contract between the manufacturer or other supplier and the lessor. Thus, the lessee has a right of action against the supplier and the manufacturer and so is not without a remedy. Fla. Stat. § 680.209; *see also id.* The remedy is simply not a warranty remedy against the lessor. It is important to note that only commercial financial leases, not consumer leases, qualify for the imposition and protection of the "hell or high water" obligation of the lessee under section 2A-407 of the Uniform Commercial Code. Edwin E. Huddleson, III, *Old Wine in New Bottles: UCC Article 2A -Leases*, 39 ALA. L. REV. 615, 665 (1988).

Mountain Rentals argues the agreement cannot be enforced because it is ambiguous. A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. ***Christenberry v. Tipton***, 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent.

***Planters Gin Co. v. Fed. Compress & Warehouse Co.***, 78 S.W.3d 885, 889-90 (Tenn. 2002). This Court's initial task in construing the agreement at issue is to determine whether the language is ambiguous. ***Id.*** at 890. There is nothing unclear about the terms of the parties' agreement. It is a finance lease and Mountain Rentals's promise to pay rent is irrevocable and independent upon its acceptance of the goods.

Mountain Rentals argues that the provision stating that the agreement may be assigned giving the new lessor "the same rights and benefits" that Telimagine had at the time of the contract but none of Telimagine's obligations is unenforceable because the agreement is a contract of adhesion, unconscionable, and contrary to public policy. We do not agree. As a finance lease, the agreement is sanctioned by statutory authority in Florida, Tennessee, and numerous other jurisdictions. Mountain Rentals is not left without a remedy for faulty goods. It just cannot maintain a cause of action against the financial lessor, but must go against the supplier and manufacturer of the goods. In ***Buraczynski v. Eyring***, 919 S.W.2d 314 (Tenn. 1996), the Supreme Court ruled that a provision of an agreement will not be enforced if it constitutes a contract of adhesion and "contain[s] such unconscionable or oppressive terms as to render [it] unenforceable." ***Id.*** at 320. We find nothing about this agreement to be oppressive or beyond the reasonable expectations of an ordinary person.

Mountain Rentals also argues that there was no mutual assent because Mountain Rentals did not understand the effect, force, and consequence of provisions of the agreement. We disagree. The terms of the contract were clear. A party is presumed to know the contents of a contract he or she has signed and, in the absence of fraud, is then bound by that contract. ***Giles v. Allstate Ins. Co.***, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993).

Mountain Rentals cannot, after receiving the benefit of the financing, seek to avoid the lease agreement. Mountain Rentals' assertions that the leased goods were not satisfactory and that Telimagine defaulted on the contract do not raise issues of fact which are material because even assuming the goods or services were defective or faulty, Wells Fargo still has a right to recover its rental payments under the agreement. Therefore, the trial court did not err in granting summary judgment to Wells Fargo.

### C. Attorney's Fees

Wells Fargo requests its attorney's fees associated with the costs of this appeal. The parties' agreement requires Mountain Rentals to pay all of costs and expenses, including reasonable attorney's fees of at least twenty percent of the remaining balance of all rental payments and collection fees incurred in enforcing the agreement. In ***Robinette v. Johnson***, we held that a contract that generally allowed for "attorney fees and costs of collection" in the event of default includes attorney's fees on appeal. ***Robinette v. Johnson***, No. M2000-01514-COA-R3-CV, 2001 WL 694477, *3 (Tenn. Ct. App. M.S., filed June 21, 2001). Accordingly, Wells Fargo is entitled to its attorney's fees and costs incurred on appeal, and we remand this case to the trial court for a determination of this amount.

***IV. Conclusion***

For the reasons stated herein, the judgment of the trial court is affirmed. Costs of appeal are assessed to Mountain Rentals of Gatlinburg, Inc.


_____
SHARON G. LEE,  JUDGE